GREENSBORO PROFESSIONAL FIRE FIGHTERS ASS'N, LOCAL 3157; Steven B. Zimmerman, Plaintiffs–Appellants,

v.

CITY OF GREENSBORO, Defendant–Appellee.

No. 94–1878.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1995.

Decided Sept. 18, 1995.

**ARGUED:** M. Travis Payne, Edelstein & Payne, Raleigh, NC, for appellants. Martin Nesbitt Erwin, Smith, Helms, Mulliss & Moore, L.L.P., Greensboro, NC, for appellee. **ON BRIEF:** Julie C. Theall, Smith, Helms, Mulliss & Moore, L.L.P., Greensboro, NC, for appellee.

Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge HAMILTON and Judge WILLIAMS joined.

## OPINION

NIEMEYER, Circuit Judge:

Steven B. Zimmerman, a firefighter in the Greensboro, North Carolina Fire Department, was passed over for promotion to captain despite being ranked first on the Fire Department's promotion list. Zimmerman sued the City of Greensboro under 42 U.S.C. § 1983, alleging that the City denied him the promotion in retaliation for his activities on behalf of the nascent Greensboro Professional Fire Fighters Association, violating his First Amendment right of free association. The Association also joined as a plaintiff. Zimmerman produced evidence that Greensboro Fire Chief Walter F. Jones, who was responsible for the promotion decision, refused to promote him because of his union activity. The district court, however, granted the City's summary judgment motion because any liability for Fire Chief Jones' conduct could not be imputed to the municipality under *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. We affirm on similar grounds.

### I

The Greensboro Professional Fire Fighters Association ("GPFFA"), which was organized in the spring of 1988, sent a letter in July 1988 to the Mayor of Greensboro, the City Manager, and Fire Chief Jones, to protest the City's refusal to pay firefighters for overtime work. The letter was accompanied by two petitions signed by numerous union members, including Zimmerman. When the City refused to take any conciliatory steps in response to the letter and petitions, the GPFFA and 91 firefighters sued the City under the Fair Labor Standards Act

("FLSA"), seeking back pay for overtime and an injunction. Zimmerman joined in that action, which was filed in September 1988 and which counsel have advised us is still pending.

At the time the FLSA lawsuit was filed, Zimmerman was ranked first on the Fire Department's latest promotions list for captain, which had been posted in August 1988. Every year, the Fire Department conducts a competition among candidates for captain,[1] which is based on scores from an objective written examination, a "selection folder review," and a subjective "assessment process." At the end of the competition, the Fire Department ranks the top twenty candidates with the highest composite scores. Since 1984, the Fire Department has always, with one irrelevant exception, promoted candidates in the order of their ranking on the promotions list.

Despite the fact that Zimmerman had the highest composite score on the August 1988 promotions list, on February 15, 1989, Fire Chief Jones promoted Emmett VanNess—the second ranked candidate on the promotions list—to captain. VanNess was not a member of the GPFFA, nor was he a plaintiff in the FLSA lawsuit against the City.

Convinced that Fire Chief Jones' decision to bypass Zimmerman was motivated by anti-union animus, Zimmerman and the GPFFA filed this action against the City in April 1989. The complaint alleges that the City's refusal to promote Zimmerman "was taken substantially in retaliation for his membership and support for the GPFFA, and to discourage other firefighters from joining and supporting the GPFFA," in violation of their First Amendment right of association and of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). Zimmerman and the GPFFA seek an injunction mandating his promotion and prohibiting similar conduct in the future. They also demand damages.

The district court granted the City's motion for summary judgment on the First Amendment claims, concluding that no evidence was presented which imputed any allegedly illegal activity to the City Manager or the City. The court observed that the decision to promote VanNess over Zimmerman was made by Fire Chief Jones and that the evidence failed to demonstrate the existence of any municipal policy or custom against union activity. The court noted that in fact City policy was to the contrary.[2] On the FLSA claim, the court denied the City's motion for summary judgment, concluding that a reasonable jury could find in favor of Zimmerman, but the jury ultimately returned a verdict in favor of the City on that claim.

This appeal followed, challenging only the district court's summary judgment in favor of the City on the First Amendment claims.

## II

To prevail against the City under 42 U.S.C. § 1983 for violation of their constitutional rights, appellants must prove more than the fact that Fire Chief Jones was retaliating against Zimmerman and other union members because of their union activities, because a § 1983 claim against a municipality cannot succeed under the doctrine of *respondeat superior. See Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) ("[T]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision *officially adopted and promulgated* by [the local government's] officers" (emphasis added)). Instead, appellants must prove that the *City of Greensboro* was responsible because Fire Chief Jones was acting pursuant to an "officially adopted" policy of disfavoring union employees. Municipal liability thus depends on whether the

---

1. Captains in the Greensboro Fire Department serve essentially as crew leaders, reporting to a Battalion Chief and, above the Battalion Chief, to a Battalion Commander. The four Battalion Commanders report to the Fire Chief, who is the top official in the Fire Department.

2. Following the district court's ruling dismissing their § 1983 claims against the City, Zimmerman and the GPFFA filed a separate lawsuit against Fire Chief Jones in his individual capacity, alleging essentially the same First Amendment violations. Counsel advised us that that case is pending.

liability asserted is based on a municipal act and not simply on the independent act of a municipal employee, even though that employee may be acting as the final decisionmaker. When a final decision by an employee implements municipal policy, then municipal liability may follow. But if a final decision does not implement municipal policy, or is contrary to it, then it is not imputable to the municipality.

█ In *Crowley v. Prince George's County*, 890 F.2d 683 (4th Cir.1989), a case factually analogous to that before us, we held that although a county police chief was authorized to make a final personnel decision, he did not have "final *policymaking* authority" that would impute liability for racial discrimination to the county under 42 U.S.C. § 1981.[3] *Id.* at 685 (emphasis added). Appellants contend, however, that the City is liable in this case because Fire Chief Jones had not only final decisionmaking authority for personnel decisions, but also "final authority to establish municipal policy" with regard to the union activities of its employees. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) (plurality opinion). If Fire Chief Jones was authorized, pursuant to state law, to establish the municipality's policy with regard to unions, it could follow that the municipality would bear responsibility for that policy.

The relevant state and city laws point to one conclusion, however: In the City of Greensboro *only* the City Manager and the City Council possess the authority to fashion policy with regard to employer-employee relations in all city departments. For example, the Greensboro City Ordinance designates the City Manager as the city's "chief personnel officer," Greensboro, N.C., Ordinances § 21–2, and establishes "a centralized personnel system under the city manager by which all matters relating to personnel shall be administered," *id.* at § 21–1. The City Ordinance describes the City Manager's duties as follows:

*The [city] manager shall administer all personnel programs* which may be activated, such as classification and compensation plans, retirement systems, testing and training programs, grievance procedures, and service rating systems; *and he shall establish … such personnel rules, plans, and procedures necessary or desirable* to implement the provisions of this chapter and *carry out the intent of the council.*

*Id.* at § 21–3 (emphasis added). Moreover, the official Personnel Manual promulgated by the City Manager contains a specific policy on unions, which explicitly recognizes the

right of [city] employees to belong freely and without discrimination to a union or other employee association of their choice. Equally the City recognizes the right of its employees to not belong to a union or other employee association.

There is no evidence in the record that the City Council or the City Manager had delegated any of its policymaking authority with regard to employer-employee relations to the Fire Chief. If the Fire Chief, in choosing not to promote Zimmerman, adopted an unofficial policy against union activity, then his unofficial policy was in conflict with the written policy established by the City.

Appellants do not dispute that these ordinances and regulations vest policymaking authority with respect to overall employer-employee relations only in the City Manager and City Council. Rather, they contend that "policymaking" authority over promotional procedures *within* the Fire Department was vested in the Fire Chief because the Fire Chief had final decisionmaking authority to appoint captains. While it is true that Fire Chief Jones had the authority to select particular individuals for promotion and even to design the procedures governing promotions within his department, this authority did not include responsibility for establishing substantive personnel policy governing the exercise of his authority. His power to appoint and to establish procedures for making appointments was always subject to the param-

---

**3.** Given that the same principles of municipal liability apply to § 1981 and § 1983 actions, *see Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 735–36, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989), it is curious that appellants failed to distinguish, or even to cite, our *Crowley* decision.

eters established by the City. Appellants confuse the authority to make final *policy* with the authority to make final implementing *decisions*. *See Crowley,* 890 F.2d at 686 (holding that even though county police chief was the final decisionmaker with regard to certain personnel decisions, he was not a policymaker for the county). The importance of this distinction is highlighted by Justice Brennan's discussion in *Pembaur* of the following hypothetical situation:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. *This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.*

475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (Brennan, J., plurality opinion) (emphasis in the last sentence added).

Thus, even though Fire Chief Jones may have had final authority to determine whom to promote to captain and also to design the particular procedures to be used, he was not authorized to decide that promotional decisions could be made on the basis of an employee's union activity. The discretion to hire and fire does not necessarily include responsibility for establishing related policy. And "[i]t is the municipality's policies, not 'the subordinate's departures from them,' that must underlie [municipal] liability in such instances." *Crowley,* 890 F.2d at 687 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)).

In sum, the record demonstrates that "final policymaking authority" over employer-employee relations in the City of Greensboro rests only with the City Council and the City Manager. The record also shows that the City Manager had adopted an official policy of neutrality toward the union activities of city employees. Thus, appellants cannot establish that the City formally adopted a municipal policy embodying anti-union animus, nor that Fire Chief Jones was authorized to adopt such a policy.

## III

■■■ In addition to their effort to impute liability to the City for Fire Chief Jones' alleged discriminatory decision, appellants contend that in any event the "record ... shows a long-standing practice [in Greensboro] of chilling the exercise of First Amendment rights by firefighters." They maintain correctly that if they can prove that a "custom or practice" of discriminating against union members existed in the Fire Department, the City may be liable even if "such a custom has not received formal approval through the body's official decision making channels," *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36, and even if the City has an official, written policy that takes a position of neutrality towards unions. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 130–31, 108 S.Ct. 915, 928, 99 L.Ed.2d 107 (1988) (plurality opinion) (holding that municipality may not be insulated by mere "precatory admonition against discrimination"). To succeed on this theory, however, appellants must prove the existence of a practice that is widespread, pervasive and "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (internal quotation omitted); *see also Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir.1987), *cert. denied sub nom., City of Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Additionally, if the custom grew from within the ranks of employees, appellants may need to make an additional showing that the municipality knew about the custom and "condoned" it. *Spell,* 824 F.2d at 1391. Moreover, such custom cannot be established "by proof alone of the single violation charged." *Id.* at 1388.

In response to the City's motion for summary judgment, appellants submitted affidavits and depositions of various witnesses testifying that highly placed officials in the City and Fire Department reacted with hostility and thinly-veiled threats of employment-related sanctions in response to union organizing activities both in 1985 and in 1988. For the most part, the evidence proffered about the 1985 events consists of inadmissible hearsay, and primarily of unattributed rumors to the effect that cooperating with the union organizers "would bring trouble."[4] Evidence of this type is neither admissible at trial nor supportive of an opposition to a motion for summary judgment. *See* Fed. R.Civ.P. 56(e).[5] What little evidence remains as admissible falls far short of establishing a "custom or practice." Similarly, most of the evidence surrounding events in 1988 is flawed. It consists of testimony that is either (1) inadmissible hearsay; (2) purely speculative; or (3) solely related to threats made by Fire Chief Jones, which, as noted above, would not be imputable to the City for § 1983 purposes. The only additional probative evidence concerning events in 1988 consists of alleged threats made by Johnny Teeters, one of the battalion chiefs. Yet evidence of anti-union animus on the part of even two high officials does not prove that *the City* condoned such behavior, or even knew of it. To establish a municipal custom or practice of discrimination on the basis of union activity, appellants would have to show that the practice was so widespread and permanent that, even though the City's written policy was one of union neutrality, the City in fact pursued a policy of opposing union activity. This evidence has not been presented.

Accordingly, the judgment of the district court is affirmed.[6]

*AFFIRMED.*

---

4. For example, one firefighter testified in deposition:

> A. I understood that there had been—word come down that the petitions shouldn't be sent around. That's the word I heard through—through the department—through the station, just the guys talking.
> * * *
> Q. Nobody in the administration told you that?
> A. Not directly, no, sir. . . . It was kind of common knowledge through the department that it was—it had come down from administration. I—everyone at my station pretty well knew that—that the word was out not to sign them or be involved with them.
> Q. But you don't know who put the word out?

5. Rule 56(e) provides in pertinent part:

> Supporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

6. Appellants have also argued that regardless of whether the City is liable under 42 U.S.C. § 1983, they are entitled to an injunction to prohibit "prospective acts of harassment" given the City's "hostility to associational activity." Because appellants have failed to establish municipal liability, however, appellants are not entitled to any remedy against the City.