Franklin HASSELL, Plaintiff,

v.

THE CITY OF CHESAPEAKE,
VIRGINIA and Elaine
Morin, Defendants.

No. 2:98cv736.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 25, 1999.

Andrew Michael Sacks, Stanley E. Sacks, Sacks and Sacks, Norfolk, VA, for plaintiff.

Thomas Jeffrey Salb, Breeden, MacMillan & Green, PLC, Norfolk, VA, James Arthur Cales, III, Alan Brody Rashkind, Furniss, Davis, Rashkind & Saunders, PC, Norfolk, VA, for defendants.

*OPINION and ORDER*

MORGAN, District Judge.

On July 20, 1999, the Court held a hearing on the Defendants' motions for summary judgment. At the hearing, the Court took the Defendants' motions under **ADVISEMENT.** This Opinion and Order sets forth the Court's ruling on the Defendants' motions for summary judgment.

### I. *Factual and Procedural History*

On June 29, 1998, Plaintiff, Franklin Hassell ("Plaintiff") filed a Complaint against the Defendants Elaine Morin ("Morin") and the City of Chesapeake (the "City") alleging, among other things, that the Defendants violated his constitutional right to be free from unreasonable searches and seizures. The Plaintiff also alleged state tort claims arising out of the same incident. According to the Complaint, Defendant Morin, a social worker at the Tidewater Detention Home (TDH), alerted the Plaintiff's supervisor at TDH that she smelled a "strong odor of marijuana" when the Plaintiff passed her in the hall. Plaintiff is a Children's Counselor and Senior Parole Officer at TDH. After receiving the notification, Plaintiff's supervisor, Shirley Watkins, alerted her supervisor, Van Jones of the report. Jones and Watkins then observed the Plaintiff themselves, and did not find any behavior or odors consistent with drug use. Next, Jones called his supervisor and reported Defendant Morin's statement to his supervisor, Isaac McNeil. Jones and Watkins then wrote down statements about what they had heard and observed. McNeil then called his supervisor Mrs. Roberts, the Director of Human Services. Roberts directed McNeil to go out to TDH and take Plaintiff to the hospital to be tested. Jones and McNeil then transported Plaintiff to Chesapeake General Hospital where he was tested for the use of narcotics. The Plaintiff tested negative for the use of any narcotics. Plaintiff then filed this suit.

Count One of the Complaint alleges that Defendants failed to follow the internal procedures set up by the City of Chesapeake (the "substance abuse policy") with regard to drug testing of employees, and that Defendants deprived Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures. Count Two of the Complaint alleges a deprivation of Plaintiff's rights under the Fourteenth Amendment. Count Three alleges a violation of privacy rights under the Fourth, Fourteenth, and Ninth Amendments. Count Four alleges state claims for libel, slander, defamation, intentional and negligent infliction of emotional distress, and unreasonable search and seizure.

Defendants filed motions to dismiss to which they appended several affidavits. The Court therefore ordered that the motions be converted to motions for summary judgment, and ordered the parties to commence discovery. Plaintiff then filed supplemental memoranda in opposition to the converted motions, and Defendants filed timely replies to the Plaintiff's oppositions.

## II. *Summary of Parties' Arguments*

The City argues that the Court should grant its motion for summary judgment because the Complaint neither alleges nor argues the existence of any official policy formally or informally adopted by the City. The City further argues that there is also no allegation in the Complaint which attributes the alleged constitutional violations to the acts of high ranking officials. According to the City, the Complaint fails to state any facts or present any claims which could constitute the deprivation of a right guaranteed under the Ninth Amendment. Finally, the City argues that the Court should dismiss the pendant state claims because the City of Chesapeake is immune from liability under sovereign immunity.

Defendant Morin (along with the City) argues that the City's concern regarding keeping employees at the TDH drug free outweighs the Plaintiff's interest in remaining free from drug tests, therefore the test was not an unreasonable search. Morin also argues that the federal claims against her should be dismissed because Plaintiff has failed to demonstrate facts which would support a finding that she was personally involved in a violation of Plaintiff's constitutional rights. Morin asserts that, even if Plaintiff could present sufficient facts tending to prove that she violated his constitutional rights, she is still entitled to summary judgment based on qualified immunity.

Plaintiff responds that the City is liable for the actions of Mrs. Roberts in ordering the Plaintiff to submit to a drug test, because Roberts, as the Director of Human Services, had the final decision-making authority as to disciplinary action taken against the Plaintiff as an employee of TDH and as to whether Plaintiff would be required to submit to a drug test. Plaintiff also argues that based upon the affidavits and deposition testimony, a genuine issue of material fact exists as to the existence of a reasonable suspicion of Roberts to support a drug test. The City argues that reasonable suspicion existed for the drug test.

## III. *Standard of Review*

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc) *cert. den.*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The facts and inferences to be drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a plaintiff cannot rely on "mere belief or conjecture, or the

allegations and denials contained in his pleadings." *Doyle v. Sentry Insur.*, 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories or other evidence to show genuine issues for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When plaintiff fails to make a sufficient showing establishing an essential element of his case and the plaintiff bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other fact immaterial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. *Analysis*

### A. *Reasonable Suspicion for Drug Test*

Plaintiff argues that a genuine issue of material fact is presented as to whether or not there was reasonable suspicion based on the fact that Defendant Morin was the only person who claims to have smelled the odor of marijuana on Plaintiff, and all of Plaintiff's supervisors reported that they noticed no signs of drug use and no odors when they observed Plaintiff upon being notified by Defendant Morin.

■ It is well established that a drug test, be it a urinalysis test or blood test, is a "search" within the meaning of the Fourth Amendment. *See, National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Any government order for urinalysis must be reasonable, *Roberts v. City of Newport News*, 36 F.3d 1093 (4th Cir.1994) (unpublished), *citing Von Raab*, 489 U.S. at 665–66, 109 S.Ct. 1384. Reasonableness depends upon the particular circumstances in the context in which the search takes place. *Id.* A court must balance the individual's legitimate expectations of privacy against the government's need to conduct the testing in the manner it proposes. *Id.*

■ The Supreme Court has upheld drug testing in two situations. First, urinalysis can be required where the testing is carried out under a specific plan and is applied either randomly or routinely to Government employees, or as to private employees who occupy particularly sensitive positions tested in satisfaction of Government regulations. *Ford v. Dowd*, 931 F.2d 1286, 1289 (8th Cir.1991). Second, regardless of whether any drug testing plan is in place, a Government employer may require an employee to submit to a drug test where the employer has a reasonable articulable ground to suspect an employee of illegal drug involvement. *Id.* This second standard requires "individualized suspicion, specifically directed to the person who is targeted for the drug test." *Id* at 1290. All parties agree that Plaintiff was not classified as an employee who was subject to suspicionless testing. Thus, the pertinent issue before the Court is whether there was reasonable suspicion sufficient to search the Plaintiff, in light of the balancing test the Supreme Court has put in place.

In *Roberts*, the Fourth Circuit found that anonymous phone calls alleging that the plaintiff used drugs did not constitute reasonable suspicion. 36 F.3d 1093. In *Ford*, the court ruled that even though police officers fit within the safety-sensitive employee category, just as prison employees would, and therefore enjoy a diminished expectation of privacy, reasonable suspicion did not exist to test a police officer where the basis for the test was rumors and anonymous phone calls stating that the plaintiff used drugs. 931 F.2d at 1292.

In *Jackson v. Gates*, 975 F.2d 648 (9th Cir.1992), the court held that the employee's Fourth Amendment rights were violated because his association with another police officer who was suspected of being

involved in drugs did not constitute "reasonable suspicion" justifying a demand that the employee submit to urinalysis. In *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), the court found that reasonable suspicion existed when information regarding an employee's drug use was provided by a fellow employee who was a known drug dealer. In *Bailey v. City of Baytown, Texas*, 781 F.Supp. 1210, 1215 (S.D.Tex.1991), the court found as a matter of law that an articulable basis for suspecting that the plaintiff had used drugs existed where the plaintiff's supervisor informed her superiors that the inside of the truck which the plaintiff had just driven, smelled like marijuana.

 The facts of the instant case appear to lie somewhere on the continuum of possible scenarios illustrated by the cases cited herein. In determining whether a search was reasonable and therefore constitutional, the Court must balance the individual's legitimate expectations of privacy against the government's need to conduct the drug test. In this case, the Court believes that the balance tips in favor of the government's need. According to the unrebutted deposition testimony of Isaac McNeil, one of Plaintiff's supervisors, as a counselor at TDH the Plaintiff supervises over 125 juveniles who are awaiting trial in Juvenile and Domestic Court on pending charges. While the Plaintiff's position at TDH was not one classified as "safety-sensitive," the nature of his position is highly sensitive nonetheless. It is the very nature of a juvenile facility that those in custody are at a crossroads, particularly in regard to involvement with illegal drugs. Moreover, counselors at TDH must be ready to make decisions and judgments which will affect the safety of the juveniles in their charge.

Plaintiff's highly sensitive position with the City involves participating in the lives of the children assigned to him. Therefore, the Court **FINDS** that the evidentiary standard necessary to establish reasonable suspicion to order a drug test of a counselor at TDH is a lesser standard than that necessary to test an employee in a less sensitive position. Thus, even if it could be found that one co-worker's observation that Plaintiff smelled of marijuana was outweighed by the undisputed observations of several other co-workers, when the Court weighs the highly sensitive nature of the Plaintiff's position against his reasonable expectation of privacy, the totality of the facts support the testing order. Accordingly, the Court **FINDS** that Plaintiff's constitutional rights were not violated when he was required to submit to the drug test.

### B. *Municipal Liability*

Alternatively the Court **FINDS** that the City of Chesapeake cannot be held liable for the actions of its employees based upon a Section 1983 claim. The City of Chesapeake argues that Plaintiff fails to state a claim under 42 U.S.C. § 1983, because there is no evidence of the existence of any official policy formally or informally adopted by the City which led to a deprivation of Plaintiff's rights. Plaintiff argues that the constitutionally defective order requiring him to submit to drug testing was the direct result of an action by Director Roberts, who had final decision-making authority for the City upon whether Plaintiff would be ordered to submit to a drug test.

 "Local governing bodies can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability also attaches under Section 1983 where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483,

106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In this regard, "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* "When a final decision by an employee implements municipal policy, then municipal liability may follow." *Greensboro Professional Fire Fighters Association v. City of Greensboro,* 64 F.3d 962, 965 (4th Cir. 1995). "But if a final decision does not implement municipal policy, or is contrary to it, then it is not imputable to the municipality." *Id.*

■ In the instant case, the City Manager for the City of Chesapeake, stated in his deposition that Mrs. Roberts, the Director of Human Services had the final decision-making authority on whether Plaintiff would have to submit to a drug test. (Pazour Deposition at P. 18–20). However, the Director of Personnel, Carolyn Darden, stated in her deposition that her department was responsible for all revisions to the substance abuse policy ultimately adopted by the City, subject to the approval of the City Manager. (Darden Deposition at P. 10). Thus, much turns on whether the Court finds that Roberts, who ordered Plaintiff to submit to the test, is considered a final policymaker for the City. With regard to the drafting of the Substance Abuse Policy, the Court **FINDS** that Darden had the policymaking authority and that Roberts was simply carrying out the policy when she ordered Plaintiff to take the drug test. Roberts did not interpret the City's substance abuse policy. Rather, she applied the policy to the facts as given to her by Plaintiff's supervisors. This exercise of her discretion does not, without more, give rise to municipal liability. Moreover, Plaintiff alleges in his Complaint that the Defendants violated the Substance Abuse Policy in ordering him to submit to a drug test. As stated above, "if a final decision by an employee does not implement municipal policy or is contrary to it, then it is not imputable to the municipality." *Greensboro Professional Fire Fighters Ass'n,* 64 F.3d at 965. If, as Plaintiff alleges, in ordering him to submit to a drug test Roberts violated the city's policy then her actions could not be imputed to the City even if the Court were to find that she was a policymaker for the City. Accordingly, the Court **FINDS** that the Plaintiff has neither alleged nor proffered evidence of municipal liability on the part of the City of Chesapeake.

## C. *Morin's Motion for Summary Judgment*

Defendant Morin argues that the Section 1983 claims against her should be dismissed because Plaintiff has failed to demonstrate sufficient facts to support a finding that she was personally involved in a violation of his rights. Plaintiff argues that there is a genuine issue of material fact as to the causal link between Morin's "false report and the ultimate Fourth Amendment violation." Plaintiff cites to Section 1983 and argues that Morin "caused him to be subjected to" a deprivation of his constitutional rights.

■ In *Wright v. Collins,* 766 F.2d 841 (4th Cir.1985), the Fourth Circuit stated, "In order for an individual to be liable under Section 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of Plaintiff's right." The deprivation complained of in the instant case was the "search and seizure of [Plaintiff's] person in the form of his transportation" to Chesapeake General Hospital for drug testing. (Complaint at ¶ 17). However, in this case: (1) all of the evidence demonstrates and the Plaintiff admits that his supervisors, not Defendant Morin, made the decision to have him tested and transported to the hospital, and (2) the Plaintiff also admits that Morin was not one of his supervisors. Morin's involvement with regard to the instant case did not extend beyond her report to Watkins that she smelled an odor of marijuana on Plaintiff when she passed him in the

hall. Morin also signed a report stating her observations. She signed this report in the space designated for the Plaintiff's supervisor to sign, however, Plaintiff has admitted that she was not his supervisor. Moreover, there is no proffered evidence that Morin knew what action the supervisors took based upon on her report.

 There is no well established constitutional right to be free from allegedly false allegations. "Injury to reputation, standing alone, does not implicate a protected liberty interest." *See Paul v. Davis,* 424 U.S. 693, 711–712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Plaintiff does not allege that he suffered any adverse employment action based on Morin's statements. Further, Plaintiff does not allege a violation of his procedural due process rights based on any such adverse employment action. Any claim of deprivation of Plaintiff's liberty interest would have to be made against his supervisors who ordered the drug test and transported him to the hospital for the test. However, the Court has found that the test and the seizure of Plaintiff for purposes of testing him did not violate the constitution.

Even if, as Plaintiff alleges, Morin made the accusation with intent to harm Plaintiff in some way, her accusation constitutes the extent of her involvement. Defamatory statements, standing alone, even if made intentionally, do not rise to the level of a constitutional deprivation. *Paul,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405. Thus, the Court **FINDS** that Defendant Morin did not engage in conduct which deprived the Plaintiff of a constitutional right. Accordingly the Court **GRANTS** Morin's motion for summary judgment with regard to each of the Plaintiff's federal claims.

D. *Plaintiff's State Law Claims*

28 U.S.C. § 1367(c) states:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction,

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In light of the Court's dismissal of all of Plaintiff's federal claims, the Court **DECLINES** to exercise supplemental jurisdiction over the state claims alleged in Count Four of the Complaint. Accordingly, such claims are **DISMISSED** without prejudice to the Plaintiff's rights, if any, to prove such claims in the courts of the Commonwealth.

**V.** *Conclusion*

For the foregoing reasons, the Court **GRANTS** the summary judgment motions of both the City of Chesapeake and Elaine Morin on Plaintiff's Section 1983 claims. Further, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISSES** the state law claims without prejudice.

The Clerk is **REQUESTED** to send copies of this Order to all counsel of record.

It is so **ORDERED.**