UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-2145

MELANIE PITROLO,

Plaintiff - Appellant,

v.

COUNTY OF BUNCOMBE, NC; BRITT LOVIN; DEAN KAHL; LOYD KIRK;
VONNA CLONINGER; WESTERN NORTH CAROLINA REGIONAL AIR
QUALITY AGENCY BOARD OF DIRECTORS; WESTERN NORTH CAROLINA
REGIONAL AIR QUALITY AGENCY,

Defendants – Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.  Lacy H. Thornburg,
District Judge.  (1:06-cv-00199)

Argued: January 29, 2009          Decided:  March 11, 2009

Before WILKINSON, TRAXLER, and SHEDD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished
opinion.  Judge Shedd wrote the opinion, in which Judge
Wilkinson and Judge Traxler joined.

**ARGUED:** Michael Geoffrey Wimer, WIMER & JOBE, Asheville, North
Carolina, for Appellant.  Thomas J. Doughton, DOUGHTON & HART,
P.L.L.C., Winston-Salem, North Carolina, for Appellees.  **ON
BRIEF:** Amy L. Bossio, DOUGHTON & HART, P.L.L.C., Winston-Salem,
North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Melanie Pitrolo filed this action under Title VII claiming that the County of Buncombe, the Western North Carolina Regional Air Quality Agency, the Agency Board of Directors, Britt Lovin, Dean Kahl, Loyd Kirk, and Vonna Cloninger failed to promote her because of her gender and retaliated against her for engaging in protected opposition activity. The district court granted summary judgment in favor of Defendants on both claims. Because the district court erroneously excluded testimony favorable to Pitrolo, we vacate and remand on the gender discrimination claim. We affirm on the retaliation claim.

I

The Western North Carolina Regional Air Quality Agency ("the Agency") is governed by a five-member Board of Directors and is responsible for air quality issues in Buncombe County.[1] In 2005, Agency Director Bob Camby decided to retire, and the Board formed an ad hoc committee to recommend a candidate for Interim Director. The committee consisted of Camby and two Board members, Vonna Cloninger and Dean Kahl. Three candidates applied for the position: Pitrolo, Enforcement Supervisor David

---

[1] For purposes of summary judgment, we view the facts in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372 (2007).

3

Brigman, and Monitoring Supervisor Kevin Lance. Brigman, who was eventually promoted, had worked for the Agency since 1990 and been a supervisor since 1996, while Pitrolo had served as the Engineering Supervisor for the Agency since 2000.

Once the search began, Buncombe County Manager Wanda Greene contacted Cloninger and informed her that multiple Agency employees felt Pitrolo did not have the communication or people skills necessary to be Interim Director. Greene also independently recommended that Pitrolo not be promoted to Interim Director. During the same time period, Camby reported to Pitrolo that there was opposition to hiring her as Interim Director because of her gender and young age. Pitrolo promptly informed her father and others of Camby's statement; in response, her father contacted the Council of Independent Business Organizations ("CIBO") and complained of discrimination.[2] Ultimately, the Board learned about these allegations.

The Board held an open meeting on June 7, 2005. Cloninger initially reported that the ad hoc committee was not ready to recommend a candidate to become Interim Director. The Board then discussed the committee's search (including Pitrolo's

_____

[2] Pitrolo's father erroneously thought that CIBO controlled the Agency. While untrue, three Board members were connected to CIBO in some capacity.

4

complaint to her father about discrimination) during the closed portion of the meeting. Cloninger reported that she had received negative comments about Pitrolo from the Buncombe County office and that Pitrolo's father had made "threatening phone calls" to other community leaders.[3] The Board talked about each candidate's application, and Cloninger pointed out that Pitrolo was the least experienced of the three candidates. Despite Cloninger's earlier statement that the committee needed more time to make a recommendation, the Board decided to make a decision that day so that Camby could train the Interim Director. Before the Board voted, Board Chairman Bill Church reminded the members that they could not "hire on the basis of, or not hire on the basis of race, creed, color[.]" DVD: Board Meeting Executive Session (June 7, 2005) at 4:30pm. Cloninger responded: "We've been accused of discrimination, and as a woman, that's sort of stupid to say I'm discriminating against women, so, but I totally, totally agree with what Bill's saying

---

[3] A DVD of the June Board meeting's closed session was supplied with Pitrolo's opposition to summary judgment. Among other things, the DVD shows Cloninger saying, "I think that's what's happened here with her family has made some threatening phone calls to other community leaders, and I don't like being pushed by threat to hire someone . . . she's very well qualified . . . but the maturity level is not there at all, at this point and within the last week." DVD: Board Meeting Executive Session (June 7, 2005) at 4:15pm.

. . . [.]" Id. at 4:31pm.  Although Camby and Church recommended Pitrolo, the Board ultimately hired Brigman.

Pitrolo brought suit in North Carolina state court, alleging, among other things, gender discrimination and retaliation.  Defendants removed the case and moved for summary judgment.  The district court granted Defendants' motion for summary judgment and dismissed Pitrolo's claims.  Pitrolo now appeals the grant of summary judgment as to her gender discrimination and retaliation claims.

II

A.

We review the grant of summary judgment de novo.  JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Summary judgment is appropriate when the admissible evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence.  Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002).

We first turn to Pitrolo's gender discrimination claim. Pitrolo may defeat summary judgment by either of two avenues of proof: (a) through direct evidence that gender motivated the decision not to hire her or (b) through the burden shifting scheme established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004)(en banc), cert. dismissed, 543 U.S. 1132 (2005). Under the former, Pitrolo must only show that her gender was one "motivating factor" in the decision not to hire her. Hill, 354 F.3d at 284.

Pitrolo contends that Camby's statement that opposition to her was based on her gender constitutes direct evidence of gender discrimination. The district court concluded that Camby's statement is inadmissible hearsay, J.A. 516, but we hold that this finding is erroneous. Federal Rule of Evidence 801(d)(2) defines as non-hearsay a statement "offered against a party" that is "the party's own statement, in either an individual or a representative capacity," or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment." Camby was the Agency Director, Pitrolo's supervisor, and a member of the search committee; hence, he was an "agent" of the Agency within the meaning of

Rule 801(d)(2).[4]  Moreover, his statement regarding Pitrolo's application to become Interim Director was clearly within the scope of his employment as a member of the search committee charged with evaluating Pitrolo's application.  We find that Camby's statement is admissible under Rule 801(d)(2) as a "party-opponent admission."  Therefore, his statement constitutes direct evidence of gender discrimination and, given the facts in this record, it is sufficient to defeat summary judgment.[5]  We therefore vacate summary judgment as to the gender discrimination claim and remand for further proceedings.

## C.

The district court also granted summary judgment on Pitrolo's retaliation claim.  Section 2000e-3(a) makes it unlawful for an employer to discriminate against any employee because that employee "opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  As with gender discrimination, a plaintiff can use either direct evidence or the McDonnell Douglas burden-shifting scheme

---

[4] Camby's role as Agency Director and committee member, as well as his direct contact with the Board, distinguish his statement to Pitrolo from "unattributed rumors" found to be hearsay in cases such as Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

[5] Because Pitrolo survives summary judgment under the mixed motive framework, we need not address the McDonnell-Douglas pretext analysis.

to prove a claim of retaliation. <u>Price v. Thompson</u>, 380 F.3d 209, 212 (4th Cir. 2004). However, either scheme of proof requires Pitrolo to show that she engaged in protected activity within the meaning of § 2000e-3(a). <u>Peters v. Jenney</u>, 327 F.3d 307, 320-321 (4th Cir. 2003).

For purposes of a retaliation claim, protected activity falls into one of two categories: participation or opposition. <u>Laughlin v. Metro Washington Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998). Pitrolo concedes that at the time Defendants failed to promote her, she was not participating in an ongoing investigation or proceeding; thus, if Pitrolo did not engage in protected opposition activity, her retaliation claim fails.

To determine whether an employee engaged in protected opposition activity, a court balances "the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." <u>Id</u>. Opposition activity encompasses "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." <u>Id</u>. We have typically found these informal complaints to be protected when they are made by the employee to the employer. See e.g. <u>Bryant v. Aiken Regional Medical Centers Inc.</u>, 333 F.3d 536,

9

543-544 (4th Cir. 2003); <u>Armstrong v. Index Journal Co.</u>, 647 F.2d 441, 448-49 (4th Cir. 1981).[6]

In light of this precedent, we find that Pitrolo's statements to her father do not qualify as protected activity under § 2000e-3(a).[7] There is no evidence that Pitrolo intended for her father to pass along her complaints to Defendants. J.A. 238. Pitrolo did not communicate her belief to her employer and was not attempting to bring attention to the alleged discriminatory conduct. Instead, Pitrolo told her father of Camby's statements because she was "close to [her] father" and "it was something that was very important that was going on in [her] life at the time." J.A. 238. As noted by the district

---

[6] We do not read <u>Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.</u>, 129 S.Ct. 846 (2009) to affect our analysis. In <u>Crawford</u>, the Supreme Court held that the opposition clause extends to employees who involuntarily testify in an internal investigation of alleged sexual harassment. The Court pointed to an EEOC guideline explaining that "'[w]hen an employee communicates *to her employer* a belief that her employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" <u>Crawford</u>, 129 S.Ct. at 851 (citing 2 EEOC Compliance Manual §§ 8-II-B(1), (2), p. 614:0003 (Mar.2003))(emphasis added). As Justice Alito noted, <u>Crawford</u> does not extend to cases where employees do not communicate their views to their employers through purposive conduct. <u>Crawford</u>, 129 S.Ct. at 855 (Alito, J., concurring).

[7] Although Pitrolo spoke to several people about the alleged gender discrimination, she does not contend that the Board discovered any of her other statements.

10

court, it would not be reasonable to "characterize a private complaint to a close family member as an 'informal grievance procedure' under <u>Laughlin</u>." J.A. 527. Since Pitrolo's statement to her father was not protected activity, her retaliation claim fails.

## III

For the foregoing reasons, we vacate and remand Pitrolo's gender discrimination claim and affirm the district court's grant of summary judgment in favor of Defendants on her retaliation claim.

<u>AFFIRMED IN PART,</u><br>
<u>VACATED IN PART,</u><br>
<u>AND REMANDED</u>